# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, DC

## UNITED STATES
### v.
### Jason R. GAMMONS
### Seaman Recruit, U.S. Coast Guard

## CGCMS 24127
## Docket No. 1078

## 19 June 1998

Special Court-Martial convened by Commanding Officer, Coast Guard Support Center, Alameda, California. Tried at Alameda, California, on 23 May 1996.

| | |
|---|---|
| Military Judge: | CDR Michael J. Devine, USCG |
| Trial Counsel: | LT Benes Z. Aldana, USCGR |
| Detailed Defense Counsel | LT J. K. Van Nest, JAGC, USNR |
| Appellate Defense Counsel: | LT Richard R. Beyer, USCGR |
| Appellate Defense Counsel: | LCDR Allen Lotz, USCG |
| Appellate Government Counsel: | LT William G. Rospars, USCG |

## OPINION OF THE COURT *EN BANC*

### BEFORE

### BAUM, KANTOR, AND WESTON[*]
Appellate Military Judges

BAUM, Chief Judge:

On 17 November 1997, the Court, with one judge dissenting, ordered a sentence rehearing in this case based on a violation of *U.S. v. Pierce,* 27 M.J. 367 (CMA 1989), by the trial counsel, who improperly

used a prior punishment under Article 15, UCMJ, for sentencing purposes, notwithstanding the fact that the nonjudicial punishment was for three of the same offenses before the court. On 30 December 1997, in response to a motion by the Government, the Court ordered reconsideration of that decision and, in so doing, ordered counsel to address the relevance and effect on the decision and *U.S. v. Pierce*, supra, of *Hudson v. United States*, 522 U.S. _, 118 S.Ct. 488 (1997), and cases cited therein . Briefs having been received and oral argument having been heard, we have reconsidered our earlier decision and, upon such reconsideration, adhere to our prior determination. In reaffirming our previous holding, we have concluded that developments in the law relating to double jeopardy warrant examination and discussion.

Those developments are reflected in the U.S. Supreme Court s most recent opinion dealing with the Fifth Amendment s double jeopardy clause, *Hudson v. United States*, supra. They have bearing on the instant case because they express an outlook on double jeopardy that may affect the underlying rationale of the military case found to be controlling in our earlier decision, *U.S. v. Pierce*, supra. Central to the *Pierce* opinion was its holding that Article 44, UCMJ, is by its terms inapplicable to nonjudicial punishments. [2] That holding was consistent with a prior cited decision, *U.S. v. Fretwell*, 11 USCMA 377, 29 CMR 193 (1960), which found that neither Article 44 nor the Constitution s Fifth Amendment jeopardy clause applied to nonjudicial punishment because those provisions bar subsequent trials only when there has been a prior **judicial proceeding** for the same offense. Having found the former jeopardy concept inapplicable to nonjudicial punishment, the *Pierce* Court relied on the intent of Congress, as expressed in Article 15 (f) UCMJ[3], to hold that, absent some sinister design, evil motive, or bad faith on the part of military authorities, it was not a violation of military due process to court-martial a servicemember for a serious offense, even though the member had already been punished nonjudicially.

*Hudson*, supra, has prompted us to take another look at the *Pierce* and *Fretwell* holdings because it is clear from this Supreme Court opinion and cases cited therein that a judicial proceeding is not a necessary predicate for invocation of the Fifth Amendment s double jeopardy clause. In the eyes of the Supreme Court, administratively-imposed civil penalties can be seen as the equivalent of criminal punishment for double jeopardy purposes, if certain tests are met. A good example of the application of this principle may be found in *Department of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767 (1994), where a state imposed dangerous drug tax was held to be "the functional equivalent of a successive criminal prosecution," and, thus, within double jeopardy proscription . It appears to this Court that if a state imposed tax may equate to criminal punishment for purposes of double jeopardy, then nonjudicial punishment should certainly qualify for the same treatment. Indeed, with Supreme Court tests in mind, Appellant has asserted that nonjudicial punishment amounts to criminal punishment and is, therefore, protected under the Fifth Amendment to the Constitution. Appellant s Supplemental Brief of March 23, 1998, p.2. The Government contends otherwise, however. Applying the same tests, and citing *Parker v. Levy*, 417 U.S. 733 (1974), the Government submits that nonjudicial punishment, while regarded as punishment, is not criminal punishment for purposes of double jeopardy consideration. Government Reply of April 7, 1998, p.5.

While there are valid arguments on both sides of this issue, it appears to us that the latest Supreme Court decisions support the conclusion that nonjudicial punishment falls squarely under the terms of the Fifth

Amendment, unless there is reason to specifically exclude military disciplinary action from the reach of this line of cases. In choosing whether to characterize an Article 15 sanction as a civil penalty or criminal punishment, it strikes us that criminal punishment is a much more appropriate descriptive term for this form of disciplinary action than civil penalty. When we apply the seven guideposts from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), we reach the same conclusion as Appellant, that Article 15 punishment does constitute criminal punishment.[4] Furthermore, we agree with Appellant s observation that Congress, through the Uniform Code of Military Justice, and the President, through the Manual for Courts-Martial, "have manifested a plain intent that NJP be a criminal sanction." Appellant s Answer Brief of 17 February 1998, p.13. If these conclusions are correct, and punishment under Article 15, UCMJ is not excluded from Constitutional double jeopardy coverage because of a reason unique to the military, then such punishment for any offense, whether serious or minor, would bar a subsequent court-martial, notwithstanding the legislative attempt in Article 15(f) to authorize such trials for serious offenses. A court-martial for minor offenses, after imposition of punishment under Article 15, is already barred by the terms of Article 15 and R.C.M. 907(b)(2)(D)(iv).

Notwithstanding our thoughts on the possible changes to military case law wrought by Supreme Court decisions, we must follow the military rulings until they are modified by our higher court. *U.S. v. Kelly*, 45 M.J. 259 (1996); *U.S. v. Allbery*, 44 M.J. 226 (1996). Accordingly, until the Court of Appeals for the Armed Forces addresses and rules on the subject under discussion, we must follow the holding in *Pierce,* supra, that a subsequent trial is not barred for a serious offense which has been the subject of nonjudicial punishment.[5] The constitutional dimensions of this issue, however, underscore the importance of the actions outlined in *Pierce* to prevent imposition of double punishment. If, upon reexamination, our higher court determines again that prior punishment under Article 15, UCMJ for a serious offense is not a bar to a court-martial, then strict adherence by the Government to the prohibitions set out by Judge Cox in *Pierce* should be an absolute necessity. The Government simply cannot use the prior nonjudicial punishment for any purpose at trial. That injunction was violated in the extreme in this case when the trial counsel introduced evidence of such punishment at sentencing and argued that the accused s treatment under Article 15 should be considered as a matter in aggravation of the sentence. In our earlier opinion, we refused to treat this error as waived by defense counsel s failure to object. We adhere to this position and find it justified on two grounds, either by characterizing the Government s misdeeds as plain error for which waiver will not be applied or by an exercise of this Court s plenary review authority "to do justice," as expressed in *U.S. v. Claxton*, 32 M.J. 159, 162 (CMA 1991). We deem waiver inapplicable on both grounds.

As a final matter for resolution, we must determine again whether reassessment of the sentence by this Court to correct the prejudice from the errors found is appropriate or whether return of the record for a sentence rehearing is the proper course. As before, we find the latter action to be necessary. We chose that corrective method previously because we were not assured of the minimum sentence the judge would have imposed had the errors not been committed. We are still of that mind. There is also another reason for this action that has become apparent during our reexamination of the Code, the pertinent cases and the Manual for Courts-Martial. Those sources make it clear that Article 15 punishment is limited to offenses that are minor and that subsequent trial is barred when punishment has been imposed for such

minor offenses. Serious offenses, on the other hand, are not barred from subsequent trial, presumably because they are not the proper subject for nonjudicial punishment, given the express language of Article 15(f), UCMJ, which states that such offenses are "not properly punishable under this Article." If serious offenses are not properly punishable under Article 15, then, in our view, such punishment for a serious offense should be ruled as void when the offense is subsequently declared to be serious by its referral to a court-martial and a conviction obtained.

As developed in *U.S. v. Fretwell,* supra, characterization of an offense as minor or serious can depend on the circumstances surrounding the offense. A commanding officer s determination whether to treat an offense as minor or serious is indicated by the forum to which the offense is referred. Imposition of nonjudicial punishment reflects the commanding officer s decision to treat the offense as minor. A subsequent decision by that commanding officer or higher authority to refer that same offense to a court-martial constitutes a determination that that offense in reality is serious, and, thus, not appropriate for punishment under Article 15. When the seriousness of the offense is confirmed by trial and conviction, those actions should serve to void the prior nonjudicial punishment, and cause removal of that punishment from the accused s record and restoration of rights, if such was not accomplished earlier. Accordingly, we find that Appellant s conviction by court-martial has rendered the prior nonjudicial punishment for the same offenses void. Evidence of that nonjudicial punishment should be expunged from Appellant's record and all lost rights, privileges, and property restored before a sentence rehearing is held. These steps are deemed to be within the authority of this Court, given the posture of this case. Furthermore, they accord, in our view, with actions contemplated in *U.S. v. Pierce,* 27 M.J. at 369, note 4. Once these actions are taken, crediting of prior punishment against the sentence becomes unnecessary, except for those aspects of imposed punishment that cannot be restored. They also solve the crediting problem presented in this case by Appellant s reduction at Captain s Mast from E-2 to E-1. Finally, without a record of prior punishment, adverse use by the Government of that punishment is precluded, leaving it solely within the discretion of the Appellant whether to bring the fact of prior punishment to the attention of the court, as provided for by the terms of Article 15(f).[6]

The findings of guilty are determined again to be correct in law and fact and should be approved. Accordingly, the findings of guilty approved below are affirmed. The sentence is set aside and a sentence rehearing is ordered. If a rehearing is deemed impracticable, a supplementary court-martial order should be issued reflecting that determination, the affirmed findings, and no sentence. In any event, the referral and conviction by court-martial of offenses previously the subject of nonjudicial punishment has acted to void that punishment. It shall be expunged from Appellant s record and all rights, privileges, and property of which Appellant has been deprived by virtue of that nonjudicial punishment shall be restored prior to the rehearing on sentence. Upon completion of all action below, the record, reflecting the action taken pursuant to our order, shall be returned to this Court pursuant to *Boudreaux v. U.S. Navy-Marine Corps Court of Military Review,* 28 M.J. 181 (CMA 1989).

KANTOR, Judge (concurring):

In *U.S. v. Gammons*, 47 M.J. 766 (C.G.Ct.Crim.App. 1997), I concurred with Chief Judge Baum on the

need for a rehearing on sentence. I did so based upon my belief that the record evidenced plain error when the trial counsel not only introduced evidence of prior nonjudicial punishment at the sentencing phase of the court-martial covering offenses the defendant had just been convicted of earlier in the proceeding, but also later commented upon that evidence in his sentencing argument in an obvious attempt to increase the punishment. Furthermore, based upon my reading of the record, I was convinced that none of the trial participants were aware of the requirements of *U.S. v. Pierce*, 27 M.J. 367 (CMA 1989). Because of the implications this situation had on fundamental notions of due process of law, I did not believe waiver, as urged by the Government, applied to the facts of the case. I would have been less certain, however, of the plain error application under the facts of this case had the trial counsel not commented upon this evidence in his sentencing argument. While the military judge was certainly aware that the nonjudicial punishment offenses were included in the charges before the court, it is unclear how the military judge used this evidence when determining the sentence. Like *U.S. v. Thompson*, 41 M.J. 895 (Army Ct.Crim.App. 1995), I believe the uncertainty surrounding the sentence requires that a rehearing be ordered.

While I also share Chief Judge Baum s concern over the use of prior nonjudicial punishment at a subsequent court-martial for the same offenses, I am not prepared to say that *Hudson v. United States*, 522 U.S._, 118 S.Ct. 488 (1997), stands for the proposition that mast punishments are in danger of being equated to criminal punishment for double jeopardy purposes. I do, however, fully agree that strict adherence by the Government to the prohibition set out by Judge Cox in *Pierce* is absolutely essential for due process. I especially support the voiding of Appellant s nonjudicial punishment and their expungement from his service record as discussed in the lead opinion. Such action, in my opinion, "does justice" and enhances the reputation of the military justice system without denying a commander the ability to address disciplinary problems.

WESTON, Judge (dissenting):

I believe that the duplicative punishments in this case can be fully cured without the need for a rehearing on sentence. Adjusting the Appellant s sentence with the credit required by *U.S. v. Pierce*, 27 M.J. 367 (C.M.A. 1989) is sufficient; further relief is neither appropriate nor required.

I adhere to my earlier opinion in this case and continue to find the argument for applying the doctrine of waiver compelling. However, even if waiver is not applied here, I believe the same outcome should result. I simply do not consider the Government s introduction at sentencing of documents recording the Appellant s prior Article 15 on three of the offenses to be error in the context of this case.

Although the majority concludes that the prior Article 15 proceeding should be "voided" and removed from the Appellant s service record following conviction, doing so doesn t erase the relevance of the Appellant s recidivism. I think the fact that Appellant was sanctioned by his Commanding Officer for violating Article 112a, just 6 days before committing another violation of Article 112a, remains a highly relevant matter in aggravation. Excluding that information from consideration by the sentencing authority would, in such circumstances, significantly degrade the ability of the sentencing authority to

do justice in the case of an accused. I do not read *Pierce* nor do I read Article 15 as prohibiting the Government from introducing this evidence during the sentencing phase of the trial when the Defense does not object.

For the Court,

//s//
Brian A. Johnson
Clerk of the Court